## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Pamela Powell,

                    Plaintiff,

                                        Case No. 1:19-cv-3808-MLB

v.

Burger Docs Atlanta, Inc.,

                    Defendant.

_____/

## **OPINION & ORDER**

Plaintiff Pamela Powell sued Defendant Burger Docs Atlanta, Inc. for retaliation in violation of Title VII of the Civil Rights Act of 1964. (Dkt. 1.) Defendant moved for summary judgment. (Dkt. 59.) The Magistrate Judge issued a Report and Recommendation ("R&R"), recommending Defendant's motion be granted. (Dkt. 81.) Plaintiff objects to the Magistrate Judge's recommendation. (Dkt. 85.) After conducting a de novo review of the portions of the R&R to which Plaintiff specifically objects and a plain error review of the rest, the Court sustains in part and overrules in part Plaintiff's objections. As a result, the Court denies Defendant's motion for summary judgment.

I.   **Background**[1]

Plaintiff formerly worked for Defendant as a line cook and supervisor.  On December 11, 2018, she was discharged, ostensibly for job abandonment.  Plaintiff asserts, contrary to Defendant's stated reason, she was fired in retaliation for participating in an investigation involving her supervisor's alleged sexual harassment of a subordinate.

A.   **Plaintiff's Employment with Defendant**

During the relevant times, Defendant owned and operated a franchise burger restaurant, BurgerFi, in the food court of the CNN Center in Atlanta, Georgia.  (Dkts. 59-2 ¶¶ 1–2; 67-1 ¶ 1.)  In February 2018, Tia Vaiton (Defendant's General Manager) hired Plaintiff.  (Dkts. 59-2 ¶ 3; 67-1 ¶ 4.)  At the time of her hire, Plaintiff had previous experience as an opening and closing supervisor of a corporate-owned BurgerFi, but had most recently worked as a line cook at another corporate BurgerFi location in Atlanta.  (Dkt. 60-1 at 36:4–38:12.)[2]

---

[1] The Magistrate Judge thoroughly laid out the factual background in his R&R.  (Dkt. 81 at 22–36.)  For convenience, the Court summarizes the facts here.

[2] For depositions, the Court cites the page numbers applied by the CM/ECF system.

Defendant hired Plaintiff as a supervisor but had her "in line" to be a manager.  (Dkt. 60-1 at 31:7–32:12, 129:2–8, 169:10–16.)  Michele McCauley, as owner and franchisee, was the most senior authority at the restaurant, and Ms. Vaiton, as general manager, was second most senior. (*Id.* at 33:25–34:6.)  Ms. McCauley regularly came to check on the store and monitored employees through a camera system.  (Dkt. 67-1 ¶ 5.) Plaintiff could supervise others when Ms. McCauley and Ms. Vaiton were not present but was always subject to their instruction.  (Dkt. 59-2 ¶ 8.) She also had some measure of authority over her subordinates even when her superiors were present.  (Dkt. 60-1 at 34:15–24, 42:2–43:2, 79:8–80:2.)

Defendant had a set of rules for all employees.  Plaintiff testified she remembered seeing Defendant's "Everyday Rules and Regulations" ("Rules") poster hanging on the wall in Defendant's office and kitchen. (*Id.* at 18:12–19:1, 231.)  Plaintiff acknowledged reading the Rules and recalled that management alerted the employees before making changes. (*Id.* at 19:11–14.)  She testified the Rules "was just a list that we, pretty much, signed off on, saying that we agree."  (*Id.* at 16:21–23.)

The second paragraph of the Rules stated: "No one can leave without being approved by management. **(If you leave on your own free will, you will be terminated for job abandonment.)**" (*Id.* at 231 (emphasis in original).) The sixth and seventh paragraphs explained that only a manager could approve employee breaks and employees would be terminated if they failed to obtain such approval. (*Id.*) Plaintiff testified she understood she had to clock out before taking a break. (*Id.* at 131:8–23.) Although Plaintiff testified she did not recall seeing rules or instructions requiring employees to obtain permission from managers before leaving their work stations, she also testified that "people would leave to take a smoke break or go to the bathroom *with permission*." (*Id.* at 19:15–20:13, 41:18–42:1, 79:2–21 (emphasis added).) Defendant relies on its employees to be present during their work hours and cannot allow employees to walk off the job and return whenever they want. (Dkt. 59-2 ¶ 59.)

Plaintiff was reprimanded three times before her discharge—once for failing to complete a temperature log in March 2018 and twice for consuming beer without permission while still on duty. (Dkt. 60-1 at 43:3–47:18, 54:7–55:13, 238.) As to latter, Plaintiff was aware employees

were only permitted to drink beer when "off the clock" and after obtaining permission. (*Id.* at 26:14–27:17.) Plaintiff's first alcohol-related offense came when a franchisor representative was present and observed Plaintiff's drinking. (*Id.* at 43:8–45:1.) Her second alcohol-related offense occurred while Ms. McCauley and Ms. Vaiton were out of town in November 2018. On that occasion, Plaintiff believed she and the other employees had permission to drink. (*Id.* at 46:10–48:18, 74:6–75:18, 104:6–105:22.) Ms. Vaiton learned of the drinking by reviewing videotape after she and Ms. McCauley returned to Atlanta. (*Id.* at 46:18–23.) Ms. McCauley reprimanded Plaintiff for the infraction. (*Id.* at 101:5–105:21, 106:14–17.)

## B. Defendant's Investigation of Sexual Harassment and Plaintiff's Termination

Plaintiff testified that she saw Ms. Vaiton groping Kenny Hunt, a co-worker, on Monday, November 19, 2018. (Dkts. 60-1 at 83:5–84:18; 67-1 at 22.) Plaintiff did not confront Ms. Vaiton about the incident because she did not want to get involved and Mr. Hunt, a grown man, said he had the situation under control. (Dkt. 60-1 at 171:6–10.) Ms. McCauley, however, learned of the issue from another source and began her own investigation. (*Id.* at 147:4–148:17.) She reviewed video footage

and interviewed employees.  (Dkts. 59-2 ¶¶ 27, 29; 67-1 at 26; 67-2 at 78:2–24.)

Sometime between November 27, 2018 and December 11, 2018, Ms. McCauley called Plaintiff on her day off to speak with her about the allegations against Ms. Vaiton and Plaintiff's recent infraction for unauthorized drinking.  (Dkt. 60-1 at 99:6–17.)   In response to Ms. McCauley's questioning, Plaintiff explained what she had seen and agreed to provide a written statement.  (*Id.* at 99:20–100:22.)  According to Plaintiff, she kept it simple and told Ms. McCauley "Tia grabbed Kenny, that I seen it with my own eyes."  (*Id.* at 100:16–17.)  Ms. McCauley also asked Plaintiff if she was having a sexual relationship with a subordinate employee.  (*Id.* at 106:7–107:24, 133:17–136:23.)  The conversation became heated as Plaintiff felt Ms. McCauley was harassing her over something that was none of Ms. McCauley's business.  (*Id.*)

Ms. McCauley eventually concluded Ms. Vaiton had not groped Mr. Hunt.  (Dkts. 67-2 at 87:25–88:8, 88:21–24; 70-1 ¶ 35.)  Ms. McCauley was persuaded by Ms. Vaiton's denial of any inappropriate behavior, video footage from the alleged day of the incident that showed no such harassment, and statements from two employees who said they

overheard Plaintiff and Mr. Hunt talking about how much they disliked Ms. Vaiton and their plan to get her fired by "making something up" against her. (Dkt. 67-2 at 33-34, 87-88, 114.)

On December 11, 2018, Plaintiff opened the store as the scheduled supervisor. (Dkt. 67-1 ¶ 37.) While Plaintiff anticipated being in charge all day, Ms. Vaiton came to the store with another employee, Wendel Hattix. (Dkts. 59-2 ¶ 42; 67-1 ¶ 38; 60-1 at 114:13–115:14, 194:23–195:23.) Both were in street clothes. (*Id.*) Ms. Vaiton began giving the employees instructions even though she had not clocked in for employment. (Dkt. 59-2 ¶ 43.) At 11:00 a.m., Mr. Hattix (at Ms. Vaiton's instruction) suggested Plaintiff take a break. (Dkt. 60-1 at 115:23–116:17, 195:19–196:7.) Plaintiff refused, explaining she would take one after the lunch service. (*Id.*) By about 1:00 p.m., the restaurant was quiet and Ms. Vaiton instructed Mr. Hattix to start sending employees home. (*Id.* at 116:18–118:21, 119:4–120:8, 194:23–195:9.) Plaintiff heard this. (*Id.*) Plaintiff testified that Ms. Vaiton "said, cut people. And [Hattix] was like, 'Ya'll can go. You can go. Everybody clock out.'" (*Id.* at 198:7–10.) Although Mr. Hattix told Plaintiff to clock out and leave for the day, he was not Plaintiff's superior, and she "felt like he couldn't tell

[her] what to do." (*Id.* at 141:25–142:21, 192:5–8.)  Regardless, Plaintiff testified she believed she was supposed to head home for the day and "clocked out around the same time" as three other employees.  (Dkts. 60-1 at 118:6–119:9; 59-2 ¶¶ 48–49.)  Before leaving, Plaintiff spoke to Mr. Hunt who had just been discharged for trying to inflate the hours he had worked.  (Dks. 60-1 at 120:15–121:21; 67-2 at 99:21–22.)  Plaintiff left without saying goodbye to anyone and without confirming anything with Ms. Vaiton.  (Dkts. 60-1 at 119:18–120:14, 197:25–198:18; 67-2 at 95:13–22 ("[Vaiton] was in the office and there was other people in the office, and [Plaintiff] did not ask. And I watched. [Plaintiff] walked past the office door, went back – I watched her get her hat, her coat, walked back past the office door and walked up to the front . . . and that's when [Plaintiff] . . . clocked herself out and walked away.").)

Plaintiff acknowledged she believed she "was supposed to be clocking out and going home, but [she] never did."  (Dkt. 60-1 at 121:25–122:1.)  Apparently, she placed herself on a break.  She explained that she did not need to ask permission to take a break, so when she "was told to leave[, she] took it upon [her]self to go on break and come back."  (Dkts. 60-1 at 139:21–25; 59-2 ¶ 52.)  Plaintiff testified she ate at another

restaurant and (about 10 to 15 minutes later) returned to BurgerFi to get her purse and see if her help was needed.  (Dkt. 60-1 at 122:12–20.) Plaintiff admitted that, during her employment with Defendant, she had never before been told to go home, clocked out, and returned shortly thereafter to ask management if her help was needed.  (*Id.* at 140:15–141:8.)

When Plaintiff returned to the restaurant, Ms. Vaiton accused her of job abandonment.  (Dkt. 60-1 at 123:12–14.)  Plaintiff was confused and pressed Ms. Vaiton on the point, saying "she was standing right there."  (*Id.* at 123:15–21.)  Plaintiff told Ms. Vaiton she was there now and asked if Ms. Vaiton wanted her to go home.  (*Id.* at 123:21–124:5.)  It seemed Ms. Vaiton did not want to engage with Plaintiff.  (*Id.* at 124:7–8.)  Eventually, Ms. Vaiton told Plaintiff she was terminating Plaintiff's employment for job abandonment.  (Dkt. 67-1 ¶ 44.)  Plaintiff did not try to clock back in, but simply went home.  (Dkt. 60-1 at 124:22–125:12.) Plaintiff went to work the next day, but Ms. McCauley confirmed her termination for job abandonment.  (Dkts. 59-2 ¶ 56; 67-1 ¶¶ 46–47.)

Ms. Vaiton was not deposed during discovery.  Ms. McCauley, however, testified she was on the phone with Ms. Vaiton on the day in

question, heard someone at the front of the store yell for help, and learned (along with Ms. Vaiton) that Plaintiff had left the restaurant. (Dkt. 67-2 at 90:11–91:8.) Ms. McCauley remained on the phone during Ms. Vaiton's discussion with Plaintiff when Plaintiff returned to the store. (*Id.* at 91:23–92:2.)

On January 2, 2019, Plaintiff applied for unemployment compensation. (Dkts. 59-2 ¶ 53; 67-1 at 34; 60-1 at 245.) The Georgia Department of Labor denied the application, finding Plaintiff was "fired for leaving work without permission," thus failing "to perform the duties for which [she was] hired." (Dkt. 60-1 at 246.) Within three months of her termination, Plaintiff began working at another restaurant, where she now works as a pantry chef. (Dkt. 60-1 at 10:17–11:19.) Her starting pay rate was $14.00 per hour, more than she made with Defendant. (*Id.* at 11:22.)

## II. Standard of Review

The district court must "conduct[] a plain error review of the portions of the R&R to which neither party offers specific objections and a de novo review of the Magistrate Judge's findings to which [a party] specifically objects." *United States v. McIntosh*, No. 1:18-cr-00431, 2019

WL 7184540, at *3 (N.D. Ga. Dec. 26, 2019); *accord* 28 U.S.C. § 636(b)(1)

("[T]he court shall make a de novo determination of those portions of the

[R&R] to which objection is made."); *United States v. Slay*, 714 F.2d 1093,

1095 (11th Cir. 1983) (per curiam) (explaining that plain error review is

appropriate in absence of objection).   "Parties filing objections to a

magistrate's [R&R] must specifically identify those findings objected to.

Frivolous, conclusive, or general objections need not be considered by the

district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

After conducting the required review, "the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1).

## III.   Discussion

### A.   Discovery Disputes and Sanctions

#### 1.   Plaintiff's Objections

Since Ms. Vaiton did not testify or provide direct evidence in this

case, Defendants relied on testimony and an affidavit from Ms. McCauley

about the events precipitating Plaintiff's termination.  Plaintiff objected

to Defendant's use of that information, saying Ms. McCauley was not at

the store on the day in question and had no personal knowledge of the

facts.  (Dkt. 68 at 2.)  Plaintiff argued Ms. McCauley obtained all such knowledge from either speaking with Ms. Vaiton or reviewing videotapes from the store.  She argued the information from Ms. Vaiton was inadmissible hearsay and the information from videotapes should be disregarded because Ms. McCauley destroyed the tapes.  She also said any information Ms. McCauley provided about Plaintiff's disciplinary record must be excluded because Defendant did not produce the file during discovery.  (*Id.*)  The Magistrate Judge addressed, and overruled, each objection.  (Dkt. 81 at 3–11.)

In regards to the hearsay objection (specifically Ms. Vaiton's reliance on information from Ms. Vaiton and the videotapes), the Magistrate Judge concluded Plaintiff did not identify "any particular statement of fact that she contend[ed] amounts to inadmissible hearsay," and Ms. McCauley testified as Defendant's corporate representative. (Dkt. 81 at 4.)  Plaintiff objects, contending Ms. McCauley "had no personal knowledge and failed to produce corroborating evidence." (Dkt. 85.)

The Court overrules Plaintiff's objections.  Ms. McCauley had (some) personal knowledge.  She testified she was watching live video

monitors and could see the events transpiring in the restaurant on the day of Plaintiff's discharge.  (Dkt. 67-2 at 40:2–8, 62:10–63:5.)  She was also on the phone with Ms. Vaiton at the time.  Ms. McCauley also testified as Defendant's corporate representative, meaning she could testify about any "information known or reasonably available to the organization," including from Ms. Vaiton (a company supervisor).  Fed. R. Civ. P. 30(b)(6); *see also Fed. Deposit Ins. Corp. v. Hutchins*, No. 1:11-CV-1622, 2013 WL 12109446, at *3 (N.D. Ga. Oct. 25, 2013) ("Rule 30(b)(6) deponent is not required or expected to have personal knowledge as to all the relevant facts or subject matter.").  Plaintiff's 30(b)(6) deposition notice identified subjects such as "Plaintiff's work performance," "reprimands," and "[a]ll information known or reasonably available to Defendant that forms the basis of Defendant's asserted defenses."  (Dkt. 55 at 1–3.)  Ms. McCauley's obligation was to "become educated and gain the requested knowledge to the extent reasonably available."  *Hutchins*, 2013 WL 12109446, at *3.

As part of her objections, Plaintiff repeats an argument from earlier that Defendant claimed during discovery it did not have contact information for Ms. Vaiton but Ms. McCauley testified that she had

spoken with Ms. Vaiton during the pendency of this case.  Plaintiff says Defendant thus improperly withheld Ms. Vaiton's contact information and records of the call between Ms. Vaiton and Ms. McCauley.  She further says the Magistrate Judge improperly ignored these facts.  (Dkt. 85 at 14.) Not true.

In its initial disclosures, Defendant provided the last known contact information it had on file for Ms. Vaiton, and Plaintiff points to nothing to support her allegation Defendant withheld any information about Ms. Vaiton.  (Dkt. 31 at 6.)  During Ms. McCauley's deposition, she explained Ms. Vaiton had called her.  (Dkt. 67-2 at 110:20–111:3.)  But Ms. Vaiton did not say where she had moved to and blocked her telephone number. (*Id*. at 111:4–12.)   No evidence thus suggests Defendant withheld information about Ms. Vaiton's whereabouts or contact information.  The Court overrules this objection to the R&R.

The Magistrate Judge rejected Plaintiff's suggestion that Defendant spoliated evidence by destroying or overwriting the videotapes from the day of Plaintiff's termination.  He concluded no evidence suggests Defendant should have known litigation would arise over Plaintiff's employment before the automatic deletion of video recordings.

(Dkt. 81 at 6–8.)   Plaintiff objects arguing Ms. McCauley "failed to produce corroborating evidence."   (Dkt. 85 at 14–15.)   She does not however, cite any evidence to challenge Magistrate Judge Larkins' conclusion that no evidence suggests Defendants anticipated litigation or should have done so before automatic deletion of the videos.   Such a showing is required to establish spoliation.   *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011) ("[A] party's obligation to retain documents . . . is only triggered when litigation is reasonably anticipated"); *id.* ("Plaintiffs, as the parties seeking spoliation sanctions, must prove that (1) the missing evidence existed at one time; (2) [Defendant] had a duty to preserve the evidence; and (3) the evidence was crucial to Plaintiffs being able to prove their prima facie case."); *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) ("[A] party's failure to preserve evidence rises to the level of sanctionable spoliation 'only when the absence of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence." (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997))).   The Court thus overrules

Plaintiff's objection to the Magistrate Judge's consideration of testimony about the videotapes.[3]

As explained, Plaintiff objected to Defendant's reliance at summary judgment on testimony from Ms. McCauley that she terminated Plaintiff—in part—due to Plaintiff's prior disciplinary infractions.  (Dkt. 68 at 5.)  She argued that, because Defendant did not produce her disciplinary record during discovery, Ms. McCauley's testimony about discipline issues should be disregarded.  (*Id.*)  The Magistrate Judge overruled this objection because Plaintiff did not explain the legal basis for it.  (Dkt. 81 at 8.)  The Magistrate Judge also concluded it was a belated request for discovery sanctions.  (*Id.* at 9–11.)  The Magistrate Judge recognized that, while Plaintiff sought production of Plaintiff's disciplinary records during discovery, Defendant objected because the CNN Center (where the restaurant and Plaintiff's disciplinary records were located) was closed due to the Covid-19 pandemic.  ((Dkt. 67-6 at 2.)

---

[3] It is not clear if Plaintiff also asserts a hearsay objection to the videotapes.  But, even if she did, the Court overrules that objection for the same reason Magistrate Judge Larkins overruled it—Ms. McCauley's testimony was largely based on live monitoring of the cameras and any testimony based on historical footage was affirmatively corroborated by Plaintiff.

The Magistrate Judge found Plaintiff knew of this problem in mid-September 2020 but chose not to move to compel, instead waiting until two months after the close of discovery to raise the issue. (Dkt. 81 at 10.)

Plaintiff objects contending—on the last day of discovery—she learned Defendant had accessed the facility during litigation and could have retrieved the relevant documents. (Dkt. 85 at 14.) Plaintiff relies on Ms. McCauley's deposition during which Ms. McCauley testified she believed she went to the restaurant in 2020, but she did not remember the month. (Dkts. 85 at 14; 67-2 at 55:9–11.) The Court agrees with the Magistrate Judge that Plaintiff first learned of the record's alleged inaccessibility in September 2020, before the close of discovery. And Plaintiff could have, and possibly should have, raised the issue at that time. But Plaintiff did not learn of Defendant's statement that she had gone to the restaurant until the last day of discovery. The Court agrees with Plaintiff that this disclosure could explain why she was no longer willing to defer to the unavailability of records. In other words, it could explain that she had not previously waived her right to any such records; she simply did not think they were available.

This changes nothing since the evidence Defendant relied on regarding Plaintiff's disciplinary history comes from Plaintiff's own deposition testimony, including her admission that she had been disciplined three times (once for not maintaining a temperature log and twice for drinking beer at work without authorization).[4] (*See* Dkts. 60-1 at 53:17–54:17, 55:4–13; 44:13–23; 46:12–25; 74:6–24; 100:23–101:15; 55:21–56:10; 105:12–107:20; 134:14–25; 59-1 at 3–4.)   The Court thus sustains Plaintiff's objection to the Magistrate Judge's reasoning on waiver but agrees with his ultimate conclusion that Plaintiff's disciplinary history may be considered at summary judgment.

## 2.   Defendant's Objections

Under Federal Rule of Civil Procedure 26, a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses" within 14 days of the Rule 26(f) conference.  Fed. R. Civ. P. 26(a)(1).  Parties must supplement

---

[4] At this time, the Court is not deciding whether Plaintiff waived this discovery issue or whether Defendant lied about the record's inaccessibility because those issues are immaterial to Defendant's motion for summary judgment.

these disclosures in a "timely manner." Fed. R. Civ. P. 26(e)(1).  Under Federal Rule of Civil Procedure 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In opposing summary judgment, Plaintiff relied upon a declaration from Jawanna Edwards, a former BurgerFi employee.  (Dkt. 67-7.) Defendant objected to Plaintiff's evidence and filed a motion for sanctions, arguing Plaintiff failed to disclose Ms. Edwards in her initial or amended disclosures and only identified her in a seconded amended disclosure she provided on the last day of the discovery period.  (Dkts. 71; 73.)  Even then Plaintiff stated Ms. Edwards' phone number and address were unknown.  (Dkt. 73 at 3.)  But Plaintiff had some form of contact information for Ms. Edwards since she was able to obtain a declaration from Ms. Edwards shortly thereafter.   Plaintiff responded but only analyzing Defendant's objections under Federal Rule of Civil Procedure 56(h)—ignoring Rule 37.  (Dkt. 75.)  The Magistrate Judge sustained Defendant's objection, reasoning Plaintiff violated Rule 26 and did not

meet her burden under Rule 37 of showing that her failure to make a timely disclosure was substantially justified or that the error was harmless.  (Dkt. 81 at 13–19.)

Plaintiff objects to that conclusion, contending testimony from Ms. McCauley "affected whether other witnesses may be relevant," thereby causing Plaintiff to amended her initial disclosures and identify Ms. Edwards.  (Dkt. 85 at 14.)  In other words, she said she only knew she would need Ms. Edwards after taking Ms. McCauley's deposition. Plaintiff, however, did not argue this before the Magistrate Judge. Indeed, she admits her new factual allegation is an attempt to "clarify the record-if not for persuasion, at least for posterity."  (*Id.*)  But an objection to a report and recommendation is not the place to assert new factual allegations.  *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding the district court need not consider new arguments raised in an objection to a report and recommendation that were not before the Magistrate Judge).  The Court thus rejects this assertion.

Before the Magistrate Judge, Plaintiff argued Defendant (1) should have already known its former employees might offer testimony, (2) should have Ms. Edwards' contact information as a former employee, and

(3) Defendant offered no evidence that Plaintiff's failure resulted from bad faith. (Dkt. 75 at 4–5.) But Plaintiff had the burden of showing her actions were substantially justified or harmless. *United States v. Batchelor-Robjohns*, No. 1:13-20164-CIV, 2005 WL 1761429, at *2 (S.D. Fla. June 3, 2005). Plaintiff was on notice Defendant was seeking to exclude Ms. Edwards as a witness based on the untimely disclosure but never explained why she waited until the last day of discovery to disclose Ms. Edwards. The Court finds no plain error in the Magistrate Judge's conclusion Plaintiff failed to show substantial justification.

"In deciding whether a failure to disclose is harmless under Rule 37(c), courts consider (1) the importance of the evidence, (2) the reasons for the failure to disclose, and (3) the prejudice to the opposing party if the evidence is considered." *Menuel v. Hertz Co.*, No. 1:07-CV-3031, 2010 WL 11497204, at *9 (N.D. Ga. Aug. 13, 2010) (citing *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) (per curiam)). Plaintiff's late and incomplete disclosure deprived Defendant of any opportunity to contact Ms. Edwards, much less depose her or offer a rebuttal witness to her testimony. Plaintiff's contention that Defendant should have known that any current or former employees may offer

21

evidence is also unavailing since Rule 26(a) requires the disclosure of potential witnesses and the subjects of their anticipated testimony.  Fed. R. Civ. P. 26(a)(1).  Ms. Edwards testimony is also significant in that it purports to offer circumstantial evidence to avoid summary judgment. Given all of this, Plaintiff has failed to meet her burden of demonstrating her untimely and incomplete disclosure was harmless.

The Court thus adopts the recommendation to exclude Ms. Edwards' declaration in evaluating Defendant's motion for summary judgment.[5]

---

[5] Defendant also objected to Plaintiff's reliance in opposing summary judgment on a BurgerFi Employee Handbook, a field certification, a text message submitted four days after Plaintiff's summary judgment response deadline—claiming Plaintiff had not properly authenticated the items.  (Dkt. 71 at 1.)  The Magistrate Judge overruled Defendant's objections because Defendant offered no reason why Plaintiff could not authenticate the documents at trial.  (Dkt. 81 at 19 n. 7.)  The Court finds no plain error as to the Magistrate Judge's consideration of the that evidence.  *See Edwards v. Gwinnett Cnty. Sch. Dist.*, 977 F. Supp. 2d 1322, 1329 (N.D. Ga. 2013) ("[C]ourts may consider unauthenticated documents on a motion for summary judgment if it is apparent that they will be admissible at trial.") (quoting *Fed. Ins. Co. v. United Cmty. Banks, Inc.*, No. 2:08-cv-128, 2010 WL 3842359, at *8 (N.D. Ga. Sept. 27, 2010)).

**B.   Defendant's Motion for Summary Judgment on Plaintiff's Retaliation Claim**

Plaintiff claims she was terminated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* for having participated in an interview with Ms. McCauley about Ms. Vaiton's alleged harassment of Mr. Hunt.  Title VII "prohibit[s] employers from taking adverse actions against employees in retaliation for their opposition to statutorily prohibited . . . discrimination." *Marable v. Marion Military Inst.*, 595 F. App'x 921, 924 (11th Cir. 2014).  "A plaintiff may establish a claim of retaliation by direct or circumstantial evidence, and when [s]he only produces circumstantial evidence, a court may use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [(1973)]." *Id.*   Under the framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal relation between the two events.  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).  The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1992).  A plaintiff must then rebut the

23

defendant's alleged nondiscriminatory reason with evidence the explanation is merely a pretext for retaliation—that is, that the proffered reason for the decision was not the true reason. *Id.* Summary judgment is thus inappropriate where the evidence, viewed in the light most favorable to the plaintiff, creates a reasonable inference that the materially adverse action was the result of an intent to retaliate. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011).

### 1.   Plaintiff's Prima Facie Case

Here, as the Magistrate Judge correctly recognized, Plaintiff presents only circumstantial evidence, so the *McDonnell Douglas* framework applies.   Plaintiff must start the process by presenting evidence she engaged in statutorily protected activity, she suffered an adverse employment action, and a causal relation between the two events. *Brown*, 597 F.3d at 1181.  To meet this burden, Plaintiff says she participated in Ms. McCauley's investigation and that, as a result, Defendant cut her hours and terminated her employment.  In regards to Plaintiff's discharge, Defendant only disputes the first element—whether

Plaintiff engaged in statutorily protected activity.[6]   The Magistrate Judge found she did, and the Court finds no plain error in that recommendation.

In Title VII, Congress created two types of activities protected against retaliation.   *See* 42 U.S.C. § 2000e3(a).   An employer may not retaliate against an employee either because the employee opposed any practice made unlawful by Chapter VII or because the employee has made a charge, testified, assisted or participated in an investigation, proceeding, or hearing under Title VII.   *See* 42 U.S.C. § 2000e3(a); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999).   The first prohibition is referred to as the "opposition clause" and the second as the "participation clause."   *Id.*   Plaintiff contends her conversation with Ms. McCauley about Ms. Vaiton's sexual harassment of Mr. Hunt was protected under the participation clause.   But that conversation occurred during Defendant's internal investigation of the alleged harassment and

---

[6] The Court notes Plaintiff testified she was confused whether Ms. Vaiton fired her on December 11, 2018.  (Dkt. 60-1 at 124:24–125:3.)  But both parties argue Ms. Vaiton was the person who terminated Plaintiff that day and Ms. McCauley confirmed the termination the next day.  (Dkts. 67-1 ¶ 44; 59-1 at 10; 60-1 at 127:10–16.)  The Court thus treats the original termination by Ms. Vaiton as the adverse employment action.

before an EEOC charge or investigation had been initiated.  Plaintiff's conversation with Ms. McCauley thus was not protected under the participation clause.  *See E.E.O.C. V. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (the participation clause only protects "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC") (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978)).

But, by the thinnest of margins and on the specific facts of this case, there is a material issue of fact as to whether Plaintiff's conversation with Ms. McCauley was protected by the ***opposition*** clause since Plaintiff provided Ms. McCauley with information about an alleged sexual assault by Defendant's general manager (Ms. Vaiton) and offered to prepare a written statement as part of Ms. McCauley's investigation.  To establish such a claim, a plaintiff must show that she had a "good faith, reasonable belief" that her employer engaged in an unlawful employment practice and that she opposed that practice.  The Supreme Court has explained that an employee can meet this requirement without initiating a

26

complaint of discrimination, including by indicating opposition to such conduct while responding to an employer's internal investigation. *See Crawford v. Metropolitan Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276–78 (2009) (holding that an employee may engage in protected activity under the opposition clause even if she does not instigate or initiate a complaint of discrimination, but merely indicates opposition to such conduct in responding to questions from her employer during an investigation). The Magistrate Judge chronicled Plaintiff's actions showing her hesitation or reluctance at becoming involved in the investigation. But, in the end, she met with Ms. McCauley, provided information about Ms. Vaiton's alleged harassment, and offered to provide a written statement for the investigation. According to the Supreme Court this meets the bare minimum for "opposing" an unlawful practice. As Defendants did not challenge the other elements of Plaintiff's prima facie case, the Court adopts the Magistrate Judge's recommendation that Plaintiff has stated a prima facie case of retaliation as a result of her termination for opposing Ms. Vaiton's alleged sexual harassment and by participating in the internal investigation as she did.

27

In addition to claiming she was discharged for opposing Ms. Vaiton's sexual harassment, Plaintiff argues her hours were reduced in retaliation for speaking with Ms. McCauley. The Magistrate Judge found the evidence simply does not support Plaintiff's argument. Plaintiff did not object to that conclusion, and the Court finds no plain error in it. Plaintiff's paystubs show that for the nine months before witnessing the groping incident, Plaintiff worked an average of 72 hours every pay period. (Dkt. 60-1 at 251–69.) In the weeks after the incident and her conversation with Ms. McCauley, Plaintiff's paystubs show she worked an average of 80 hours per pay period. (*Id.* at 270–71.) Plaintiff thus worked more after engaging in protected activity than she did before. The Court thus adopts the Magistrate Judge's recommendation that summary judgment should be granted as to any retaliation claim based on reduced hours.

### 2.   Legitimate Non-Retaliatory Reason

Because Plaintiff can establish a prima facie case of retaliation with regard to her discharge, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008). This burden is one of

production, not persuasion, and is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

The Magistrate Judge found Defendant met its burden because it asserted Plaintiff was discharged for job abandonment when she left work without informing anyone, and Ms. McCauley relied on that conduct as well as Plaintiff's prior infractions when she confirmed the termination. (Dkt. 81 at 46.) Plaintiff challenges the Magistrate Judge's finding. Plaintiff contends "the only evidence in the record of an alleged legitimate non-discriminatory reason for [Ms.] Vaiton to terminate [Plaintiff] on December 11, 2018 is the controverted, uncorroborated hearsay testimony of the owner of the company, i.e. the most interested witness." (Dkt. 85 at 2.) Plaintiff argues summary judgment cannot be granted solely on Ms. McCauley's testimony. (*Id.* at 1.) After conducting a de novo review, the Court concludes Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for its decision. Ms. Vaiton was the decisionmaker who terminated Plaintiff on December 11, 2018. (Dkts. 67-1 ¶ 44; 59-1 at 10.) The record contains no affidavits, statements, notes, or testimony from Ms. Vaiton. Defendant instead relies on Plaintiff's own testimony to show her conduct on the day of her

termination—the reason for termination.  (Dkt. 59-1 at 9, 15–20.)  "The employer need only offer admissible evidence sufficient to raise a genuine issue of fact as to whether it had a legitimate reason for [terminating] the plaintiff."  *Turnes*, 36 F.3d at 1061.  Defendant met that burden through Plaintiff's own deposition testimony, which indicates Ms. Vaiton could have believed Plaintiff abandoned her job.  The Court overrules Plaintiff's objection and adopts the R&R as to Defendant's legitimate non-retaliatory reason.

### 3.    Pretext

Because Defendant met its burden, the burden shifts back to Plaintiff to show Defendant's proffered legitimate, non-retaliatory reason for its adverse employment action is merely pretext for unlawful retaliation.  *Berber v. Wells Fargo, NA*, 798 F. App'x 476, 479 (11th Cir. 2020).  A plaintiff raises a genuine issue of material fact concerning pretext if she casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the proffered reasons were not actually what motivated its conduct and retaliation was the actual motivation.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2004).  A plaintiff may do

this "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804–05). Plaintiff must therefore "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but retaliation was instead. *Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). A plaintiff cannot "establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, as long as the reason is one that might motivate a reasonable employer." *Pennington v. City of Hunstville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (quotations omitted). When the reason given for the adverse employment action is one that might motivate a reasonable employer, a plaintiff must meet the reason "head on" and not simply quarrel with the wisdom of the reason. *Chapman*, 229 F.3d at 1030.

The Magistrate Judge found Plaintiff failed to establish Defendant's explanation for her discharge was pretext for retaliation. (Dkt. 81 at 53.) Specifically, he concluded that, while some evidence support's Plaintiff's subjective belief she had not abandoned her shift, the undisputed evidence shows Ms. Vaiton did not give Plaintiff permission to take a break and did not know where she had gone. (*Id.*) The Magistrate Judge thus concluded the "purported inconsistencies" between evidence of what happened on the day of Plaintiff's termination and Ms. Vaiton's explanation for the termination did not call into question Ms. Vaiton's (or Ms. McCauley's) "honest belief that she had left her shift without permission." (*Id. at 51*)

Plaintiff objects to this conclusion and contends the substantial inconsistences between Defendant's proffered reason and the facts in evidence regarding Plaintiff's termination show the reason is unworthy of credence. The Court disagrees with the Magistrate Judge's assessment of the "purported inconsistencies" and agrees Plaintiff has presented evidence sufficient for a reasonable factfinder to conclude Defendant's non-discriminatory reason was pretextual.

On December 11, 2018, Plaintiff opened the store as the scheduled shift supervisor.  (Dkt. 67-1 ¶ 37.)  While Plaintiff anticipated being in charge the entire day, Ms. Vaiton and Mr. Hattix (another employee) appeared in street clothes.  (Dkts. 59-2 ¶ 42; 67-1 ¶ 38; 60-1 at 115:2–14.)  Ms. Vaiton took over for Plaintiff by instructing the other employees about what they were supposed to do.  (Dkt. 59-2 ¶ 43.)  According to Plaintiff, around 11 a.m. Mr. Hattix asked Plaintiff to take a break.  (Dkt. 60-1 at 116:2–4.)  Plaintiff refused.  (*Id.* at 116:8–9.)  Later that same day, according to Plaintiff, Ms. Vaiton "came up and told [Mr. Hattix] to start cutting everybody."  (*Id.* at 116:19–20.)  Although Plaintiff's testimony is unclear at times, she ultimately testified Mr. Hattix told her to go home.  (*Id.* at 118:8–11.)  Plaintiff admits she did not talk to Ms. Vaiton before clocking out and leaving.  (*Id.* at 119:18–21.)  But Ms. Vaiton had told Mr. Hattix to tell people to go home.  (*Id.* at 119:22–120:8.)  From this evidence a reasonable fact finder could conclude that both Plaintiff and Ms. Vaiton believed Plaintiff was instructed to leave.

Plaintiff left, got something to eat in the food court, and came back to the restaurant to get her purse.  (*Id.* at 122:3–15.)  According to Plaintiff, that is when Ms. Vaiton told Plaintiff she abandoned her job.

33

(*Id.* at 122:4–20.)  In response, Plaintiff told Ms. Vaiton that Mr. Hattix told her she could go home.  (*Id.* at 123:15–21.)  Plaintiff then asked Ms. Vaiton what she wanted Plaintiff to do.  (*Id.* at 124:4–5.)  According to Plaintiff, Ms. Vaiton told Plaintiff to talk to Ms. McCauley.  (*Id.* at 124:6.) Plaintiff was confused and did not know what was going on, but assumed she still had her job.  (*Id.* at 124:24–125:3.)  There appears to be a dispute of fact as to whether Plaintiff left without permission and whether Ms. Vaiton had an honest belief that Plaintiff abandoned her job.  The Court acknowledges Plaintiff (1) does not explain why, for the first and only time during her employment, she refused a purported instruction to leave for the day and took it upon herself to take an unprompted break and (2) did not confirm with Ms. Vaiton or say goodbye to anyone when leaving the restaurant.  But, again, Ms. Vaiton was present when Mr. Hattix told everyone to leave.  And, when Ms. Vaiton accused her of abandoning her job, Plaintiff reminded Ms. Vaiton that she had told Mr. Hattix to send people home.  (*Id.* at 121:12-122:21.)  She explained to Ms. Vaiton why she thought she had been allowed to leave and had not abandoned the restaurant.  (*Id.*)

Plaintiff's testimony calls into question Ms. Vaiton's view of Plaintiff's conduct and thus the veracity of the proffered reason. Indeed, it does so to the extent a reasonable juror could conclude Ms. Vaiton's accusation of job abandonment is unworthy of belief. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs."); *Howard v. BP Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994) ("[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable."); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence" (quoting *Combs*, 106 F.3d at 1538); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1426 (11th Cir. 1998) ("If a plaintiff provides a prima facie case plus evidence discrediting the employer's proffered reasons, the plaintiff is entitled to have the factfinder decide the ultimate issue of discrimination."). If accepted,

Plaintiff's testimony would permit a jury to conclude Ms. Vaiton knew Plaintiff had been told by Mr. Hattix to leave for the day and could even conclude Ms. Vaiton told Mr. Hattix to give that instruction.  Sure, Defendant can argue Plaintiff's actions in failing to clock out and coming back to the store undermine her credibility.  But taking the facts in the light most favorable to Plaintiff, there is a dispute as to Ms. Vaiton's perspective on December 11, 2018—that is whether she actually believed Plaintiff abandoned her job when she fired her for that alleged reason. Defendant's motion for summary judgment is thus denied.[7]

## IV.   Conclusion

The Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's objections (Dkt. 85) and **ADOPTS IN PART** the R&R (Dkt.

---

[7] Because the Court finds Plaintiff has met her burden of showing Defendant's proffered reason is merely pretext for unlawful retaliation, the Court does not address her other objections, including her claim the Magistrate Judge incorrectly concluded the undisputed evidence established Ms. McCauley completed an investigation into the groping allegations against Ms. Vaiton and concluded the allegations were unsupported, incorrectly concluded Ms. Vaiton's appearance at the store on the day of Plaintiff's termination is not circumstantial evidence of pretext, and incorrectly concluded the temporal proximity between Plaintiff's discussion with Ms. McCauley and her discharge was insufficient to establish pretext.  The Court also does not address her argument that she has presented a convincing mosaic of circumstantial evidence to establish retaliatory motive.

81). The Court **DENIES** Defendant's motion for summary judgment (Dkt. 59).

The Court **ORDERS** this case to mediation. The parties may retain the mediator to mediate this case. The expense of a retained mediator must be paid by the parties. The parties, alternately, may request that the Court appoint a magistrate judge to conduct the mediation. The parties are not required to pay for mediation by a magistrate judge.

The parties shall advise the Court, on or before September 28, 2021, of their mediation preference. If they elect to retain their own mediator, the parties shall identify the mediator on or before October 12, 2021. The parties must have present at the mediation a person with authority to settle this litigation.

The parties shall, within five days after the mediation, notify the Court in writing whether mediation led to a settlement of this action.

The Court **STAYS** this case pending mediation. The Court **DIRECTS** the Clerk to **ADMINISTRATIVELY CLOSE** this case during the period of stay.

**SO ORDERED** this 14th day of September, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE